UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------

KATHERINE FINGER,

               Plaintiff,

       v.

MAGNACHIP SEMICONDUCTOR
CORPORATION, YOONG-JOON KIM,
KYO-HWA CHUNG, MELVIN L.
KEATING, ILBOK LEE, CAMILLO
MARTINO, GARY TANNER, and NADER
TAVAKOLI,

             Defendants.

--------------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Katherine Finger ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Magnachip Semiconductor Corporation ("Magnachip" or the "Company") and the members of Magnachip's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Magnachip will be acquired by Wise Road

Capital LTD ("Wise Road") through South Dearborn Limited ("Parent") and Michigan Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On March 26, 2021, Magnachip issued a press release announcing that it had entered into an Agreement and Plan of Merger dated March 25, 2021 (the "Merger Agreement") to sell Magnachip to Wise Road.  Under the terms of the Merger Agreement, Magnachip shareholders will receive $29.00 in cash for each Magnachip share they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.4 billion.

3.      On April 19, 2021, Magnachip filed a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Magnachip stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) the potential conflicts of interest faced by J.P. Morgan and Company insiders.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Magnachip stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Magnachip's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Magnachip's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Magnachip.

9.      Defendant Magnachip is a Delaware corporation, with its principal executive offices located at c/o MagnaChip Semiconductor S.A., 1, Allée Scheffer, L-2520, Luxembourg, Grand Duchy of Luxembourg.  Magnachip is a designer and manufacturer of analog and mixed-signal semiconductor platform solutions for communications, Internet of Things ("IoT"), consumer, industrial and automotive applications.  Magnachip's shares trade on the New York Stock Exchange under the ticker symbol "MX."

10.      Defendant Young-Joon Kim ("Kim") has been Chief Executive Officer ("CEO") and a director of the Company since May 2015.

11.     Defendant Kyo-Hwa Chung ("Chung") has been a director of the Company since July 2020.

12.     Defendant Melvin L. Keating ("Keating") has been a director of the Company since August 2016.

13.     Defendant Ilbok Lee ("Lee") has been a director of the Company since August 2011.

14.     Defendant Camillo Martino ("Martino") has been Non-Executive Chairman of the Board since June 2020 and a director of the Company since August 2016.

15.     Defendant Gary Tanner ("Tanner") has been a director of the Company since August 2015.  Defendant Tanner previously served as Non-Executive Chairman of the Board from September 2016 to November 2018.

16.     Defendant Nader Tavakoli ("Tavakoli") has been a director of the Company since November 2009.  Defendant Tavakoli previously served as Non-Executive Chairman of the Board from November 2018 to June 2020.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18.     Wise Road is a global private equity firm that invests in leading technology companies.  It focuses on identifying opportunities in enabling technologies for global urbanization and smart & green life through close cooperation with companies across several main themes, including smart city, intelligent manufacturing and renewable energies.

19.     Parent is an exempted company incorporated in the Cayman Islands with limited liability, established by an affiliate of Wise Road.

20.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Magnachip is a designer and manufacturer of analog and mixed-signal semiconductor platform solutions for communications, IoT, consumer, industrial and automotive applications.  The Company provides a broad range of standard products to customers worldwide. With more than 40 years of operating history, Magnachip owns a portfolio of approximately 1,200 registered patents and pending applications, and has extensive engineering, design and manufacturing process expertise.  The Company's standard products business includes its Display Solutions and Power Solutions business lines.  Display Solutions products provide panel display solutions to major suppliers of large and small rigid and flexible panel displays, and mobile, automotive applications and home appliances.  Power Solutions products include discrete and integrated circuit solutions for power management in communications, consumer, computing, servers and industrial applications.

22.     Magnachip's wide variety of analog and mixed-signal semiconductor products allow it to address multiple high-growth end markets and rapidly develop and introduce new products in response to market demands.   The Company's design center and substantial manufacturing operations in Korea place it at the core of the global electronics device supply chain.

23.     Magnachip has a long history of supplying and collaborating on product and technology development with leading innovators in the consumer electronics market.  As a result, the Company has been able to strengthen its technology and develop products that are in high demand by customers and end consumers.  The Company sold approximately 400 distinct products in the year ended December 31, 2020 with a substantial portion of revenues derived from a

concentrated number of customers.

24.     On February 17, 2021, the Company announced its fourth quarter and full year 2020 financial results.  Fourth quarter revenue of $142.9 million was up 14.5% sequentially and up 15.9% year-over-year ("YoY").  The Company's fourth quarter Organic Light Emitting Diodes ("OLED") Display Driver IC ("DDIC") revenue of $80.4 million set a new quarterly record, representing a 19.0% sequential increase and a 19.4% increase YoY, and full-year OLED revenue of $284.6 million increased 6.5% YoY.  Magnachip's gross profit margin for the fourth quarter was 26.9%, up 400 bps sequentially and up 220 bps YoY and its full-year gross profit margin of 25.3% was an increase of 290 bps YoY due mainly to product mix improvement.  Reflecting on the Company's results, defendant Kim commented:

> 2020 was an exceptional year for Magnachip, despite the challenges presented by the pandemic.  We entered MX 3.0, the exciting new chapter of growth, with a sharpened focus as a pure-play standard products company, renewed energy, and a clear mission of empowering our customers.  Under MX 3.0, we set long-term financial targets that we would like to achieve by 2023.  While we recognize the path will not always be a straight line, the exciting opportunities ahead of us only reinforce our confidence in our growth outlook.  I am proud of and thankful for our amazing group of dedicated employees who continued to deliver extraordinary results in 2020.

**The Proposed Transaction**

25.     On March 26, 2021, Magnachip issued a press release announcing the Proposed Transaction, which states, in relevant part:

> SEOUL, South Korea, March 26, 2021 -- Magnachip Semiconductor Corporation ("Magnachip" or the "Company") (NYSE: MX), the South Korean leader in display and power solutions, today announced that it has entered into a definitive agreement (the "Agreement") with South Dearborn Limited, a company incorporated in the Cayman Islands, and Michigan Merger Sub, Inc., a Delaware corporation, which are investment vehicles established by Wise Road Capital LTD and certain of its limited partners ("Wise Road").
>
> Under the terms of the Agreement, Magnachip shareholders will receive $29.00 in cash for each share of Magnachip's common stock they currently hold, representing

a premium of approximately 75% to Magnachip's 3-month volume-weighted average share price and approximately a 54% premium to the unaffected closing stock price on March 2, 2021, the last trading day before media reports of third-party interest in acquiring Magnachip.  The all-cash transaction has an equity value of approximately $1.4 billion.   The transaction is fully backed by equity commitments and not contingent on any financing conditions.

Following the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles, and the Company will remain based in Cheongju, Seoul and Gumi, South Korea.  The transaction is expected to be seamless for customers and employees across Magnachip's businesses.

Magnachip's Chief Executive Officer, YJ Kim, said: "This transaction is in the best interests of all of our stakeholders, including shareholders, customers and employees.  It will provide an excellent opportunity to accelerate our MX 3.0 growth strategy.  Given their deep industry expertise, Wise Road Capital is an ideal partner for Magnachip, and we look forward to working with them as we chart the next phase for our company.  We remain grateful to our customers for their trust and to our fellow employees for their unwavering commitment to delivering industry-leading products to customers worldwide."

Wise Road intends to work together with Magnachip's management team to pursue the next step in the Company's growth strategy and transform the Company into a true industry leader in the global display and power markets.  Through its additional investment and global network, Wise Road will help Magnachip's growth internationally.  Wise Road remains absolutely committed to providing world-class products and services to the Company's customers, while creating a stable environment for the company's employees to grow and thrive.

The Board of Directors of Magnachip has unanimously approved the Agreement and recommends that Magnachip shareholders vote in favor of the transaction.  Details of the transaction and the Agreement are included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

**Advisors**

J.P. Morgan Securities LLC served as exclusive financial advisor and Paul, Weiss, Rifkind, Wharton & Garrison LLP, Richards, Layton & Finger, PA and Kim & Chang served as legal counsel to Magnachip. BMO Capital Markets Corp. served as exclusive financial advisor and Hogan Lovells US LLP and Lee & Ko served as legal counsel to Wise Road Capital LTD.

**Insiders' Interests in the Proposed Transaction**

26.     Magnachip insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Magnachip.

27.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Wise Road.  Upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted stock units ("RSUs"), and performance stock units ("PSUs") will be converted into the right to receive cash payments.  The estimated aggregate amounts that would become payable to the non-employee directors in respect of their outstanding Company RSUs is $11,112,278.  The following table sets forth the value of equity awards held by the Company's named executive officers:

| Named Executive Officer | Company Options (#) | Value of Company Options ($) | Company RSUs (#) | Value of Company RSUs ($) | Company PSUs (at maximum) (#) | Value of Company PSUs ($) | Total Value of Company Equity Awards ($) |
|---|---|---|---|---|---|---|---|
| Young-Joon Kim | 335,915 | 5,606,738 | 50,918 | 1,476,622 | 249,534 | 7,236,472 | 14,319,831 |
| Young Soo Woo | — | — | 24,713 | 716,677 | 11,076 | 321,204 | 1,037,881 |
| Jonathan Kim | — | — | — | — | — | — | — |
| Theodore Kim | 127,610 | 2,072,835 | 42,640 | 1,236,560 | 61,478 | 1,782,862 | 5,092,257 |
| Woung Moo Lee | 119,810 | 2,017,727 | 31,248 | 906,192 | 43,983 | 1,275,493 | 4,199,412 |
| Chan Ho Park | — | — | 20,035 | 581,015 | 8,306 | 240,874 | 821,889 |

28.     Further, in connection with the consummation of the Proposed Transaction, Magnachip has allocated a transaction bonus pool of approximately $2,460,000 to be awarded, in the Compensation Committee of the Board's (the "Compensation Committee") discretion, to certain key executives and employees as bonuses to encourage retention.  In connection with such transaction bonus pool, the Compensation Committee approved the following awards for (i) Mr. Yoong Soo Woo, approximately $79,000; (ii) Mr. Theodore Kim, approximately $529,000; (iii) Mr. Woung Moo Lee, approximately $185,000; and Mr. Chan Ho Park, approximately $132,000.

29.     In addition, if they are terminated in connection with the Proposed Transaction, Magnachip insiders stand to receive substantial cash severance payments as set forth in the following table:

| Named Executive Officer[1] | Cash ($)[2] | Equity ($) [3] | Pensions/ NQDC ($) [4] | Perquisites/ Benefits ($) [5] | Tax Reimbursement ($)[6] | Total ($) |
|---|---|---|---|---|---|---|
| Young-Joon Kim | 2,229,584 | 14,319,831 | 364,930 | 221,908 | 115,620 | 17,251,873 |
| Young Soo Woo | 381,632 | 1,037,881 | 17,362 | — | — | 1,436,875 |
| Jonathan Kim | — | — | — | — | — | — |
| Theodore Kim | 1,024,400 | 5,092,257 | 204,311 | 147,708 | 51,878 | 6,520,554 |
| Woung Moo Lee | 651,957 | 4,199,412 | 192,121 | — | — | 5,043,489 |
| Chan Ho Park | 462,350 | 821,889 | 16,439 | — | — | 1,300,678 |

## The Proxy Statement Contains Material Misstatements or Omissions

30.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Magnachip's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

31.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, J.P. Morgan; and (ii) the potential conflicts of interest faced by J.P. Morgan and Company insiders.

### *Material Omissions Concerning the Company's Financial Projections and J.P. Morgan's Financial Analyses*

32.     The Proxy Statement omits material information regarding the Company's financial projections.

33.     For example, with respect to Magnachip's projections, the Proxy Statement fails to disclose all line items underlying unlevered free cash flow, including: (i) earnings before interest and taxes adjusted to exclude stock-based compensation expense; (ii) depreciation and

amortization; (iii) taxes, (iv) capital expenditures; (v) increases in net working capital; (vi) stock-based compensation expense; and (vii) other one-time charges.

34.     The Proxy Statement omits material information regarding J.P. Morgan's financial analyses.

35.     The Proxy Statement describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Magnachip's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36.     With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Proxy Statement fails to disclose the multiples and financial metrics for each of the comparable transactions analyzed.

37.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal values of Magnachip; (ii) quantification of the individual inputs and the assumptions underlying the range of discount rates of 9.50% to 11.50%; (iii) the Company's debt and cash; and (iv) the Company's fully diluted outstanding shares.

38.     With respect to J.P. Morgan's *Analyst Price Targets for the Company* analysis, the Proxy Statement fails to disclose the individual price targets for Magnachip and the sources thereof.

39.     Without such undisclosed information, Magnachip stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable

inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40.    The omission of this material information renders the statements in the "Forecasts" and "Fairness Opinion of J.P. Morgan" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest***

41.    The Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan.

42.    The Registration Statement states:

> During the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had, and continue to have, commercial or investment banking relationships with the Company for which J.P. Morgan and such affiliates have received, or will receive, customary compensation. Such services during such period have included acting as financial advisor on the Company's divestiture which closed in September 2020. . . .  During the two-year period preceding delivery of its opinion ending on February 28, 2021, the aggregate fees recognized by J.P. Morgan from the Company were approximately $11 million.

Proxy Statement at 66.  Yet, the Proxy Statement fails to disclose the details of any services J.P. Morgan provided to Wise Road or its affiliates in the two years preceding the date of its fairness opinion, and the related compensation J.P. Morgan received, or expects to receive.

43.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

45.     For example, according to the March 26, 2021 press release announcing the Proposed Transaction, "[f]ollowing the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles[.]"   The Proxy Statement fails, however, to disclose the details of any employment and retention-related discussions and negotiations that occurred between Wise Road and Magnachip's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Wise Road's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

46.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Magnachip's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Our Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

48.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior

to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Magnachip will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

49.     Plaintiff repeats all previous allegations as if set forth in full.

50.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's projections, J.P. Morgan's financial analyses, and potential conflicts of interest faced by J.P. Morgan and Company insiders.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

55.     Plaintiff repeats all previous allegations as if set forth in full.

56.     The Individual Defendants acted as controlling persons of Magnachip within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Magnachip, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Magnachip stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Magnachip, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Magnachip stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 3, 2021                                    **WEISSLAW LLP**


                                                       By _____
                                                          Richard A. Acocelli
                                                          1500 Broadway, 16th Floor
                                                          New York, New York 10036
                                                          Tel: (212) 682-3025
                                                          Fax: (212) 682-3010
                                                          Email: racocelli@weisslawllp.com

                                                          *Attorneys for Plaintiff*